E-FILED
Tuesday, 04 November, 2025 03:56:21 PM
Clerk, U.S. District Court, ILCD

FILED
NOV 04 2025
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 25-CR-20060 |
| COREY LEWIS, | ) | Title 18, United States Code, Section 1343. |
| Defendant. | ) | |

# INDICTMENT

## COUNT ONE through TWO
(Wire Fraud)

**THE GRAND JURY CHARGES:**

1. Beginning in or about July 2020, and continuing until in or about April 2021, in Champaign County, in the Central District of Illinois, and elsewhere,

**COREY LEWIS,**

defendant herein, knowingly participated in a scheme and artifice to defraud the Small Business Administration; Capital Plus Financial; and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**The Paycheck Protection Program**

2. On March 13, 2020, by Proclamation 9994, the President of the United States declared a national emergency concerning the coronavirus disease 2019 ("COVID-19") pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency

financial assistance to Americans suffering economic harm because of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other specified expenses through a program referred to as the Paycheck Protection Program ("PPP"). PPP loan proceeds were required to be used by the recipient to pay certain expenses, such as payroll costs, interest on mortgages, rent, and utilities.

3. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. Such certifications required the applicant to affirm that the funds would be used to retain workers and maintain payroll or for expenses such as mortgage interest payments, lease payments, and utility payments. Additionally, applicants agreed that the funds would be used only for business-related purposes as specified in their loan application as consistent with the PPP rules. The authorized representative of the applicant was also required to certify that the information provided in the application and the information provided in all supporting documents and was true and accurate. Finally, applicants were required to acknowledge that they understand that if the funds were knowingly used for unauthorized purposes, the federal government could hold them legally liable, such as for charges of fraud.

4. In the PPP loan application, the applicant was required to state, among other things, the business's: (a) average monthly payroll expenses and (b) number of employees.

These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses, such as federal tax filings and bank account records.

5. A small business's PPP loan application would be received and processed by a participating lender approved by the Small Business Administration ("SBA"). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

6. Capital Plus Financial, based in Texas, was a financial institution that was approved by the Small Business Administration ("SBA") to serve as a participating lender, and thus was authorized to directly originate, fund, and service SBA loans, with backing by the SBA Guaranty.

**Economic Injury Disaster Loan (EIDL) Program**

7. The Economic Injury Disaster Loan ("EIDL") Program is an SBA program that offers financial assistance to small businesses, renters, and homeowners in areas affected by declared disasters. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act authorized the SBA to provide EIDLs to eligible small businesses and certain other organizations experiencing substantial financial hardship due to the COVID-19 pandemic.

8. In order to obtain an EIDL and advance payment, a qualifying business was required to submit an application to the SBA and provide information about its operations, including its number of employees as of January 31, 2020, and the gross revenues and cost of goods sold for the 12-month period preceding the date of disaster. In the case of EIDLs

issued for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

9. The CARES Act also authorized the SBA to issue advance payments as an EIDL emergency grant. The amount of the advance was determined by the number of employees the applicant certified they had as of January 31, 2020, and was paid at a rate of $1,000 per employee reported up to a maximum of $10,000. If awarded, the advance did not have to be repaid.

10. EIDL applications were submitted directly to the SBA and processed with support from a government contractor. If an application was approved, the amount of the EIDL was determined, in part, based on the information provided in the application about revenue and cost of goods sold as described above. Any funds issued for an EIDL (or an advance) were paid directly from the United States Treasury. EIDL funds could be used as working capital for payroll expenses and sick leave, rent or mortgage payments, materials costs, and preexisting debt. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

**Scheme to Defraud**

11. Beginning in or about June 2020, and continuing until in or about April 2021, the defendant engaged in a scheme to fraudulently obtain a Paycheck Protection Program (PPP) loan and Economic Injury Disaster Loan (EIDL) funds. As part of the scheme to defraud, the defendant participated in the submission of false information as part of, and in support of, his PPP loan and EIDL applications.

**EIDL**

12. As part of the scheme to defraud, the defendant participated in the submission of an application for an EIDL on or about July 12, 2020. The application claimed that the defendant's business, LGIMB Apparel Inc., had ten employees as of January 31, 2020. The business address was listed as 16580 Plainview Drive, Markham, Illinois. The application claimed $121,215 of gross revenue and $0.00 of cost of goods sold, for the twelve months prior to January 31, 2020. The SBA approved the loan and $60,600 was deposited into the defendant's Chase Bank account on or about August 6, 2020. As part of the EIDL application process, it was acknowledged that EIDL funds were to be used as working capital for payroll expenses and sick leave, rent or mortgage payments, materials costs, and preexisting debt.

13. The defendant, however, did not operate a business with the financial status and activity as reported. Instead, as part of a scheme to defraud, the defendant participated in the submission of falsified information on the EIDL application and the supporting documentation in order to secure EIDL funds that the defendant was not entitled to receive.

**PPP**

14. As part of the scheme to defraud, the defendant participated in the submission of a PPP loan application dated on or about April 6, 2021, in which the application reported that the defendant was an independent contractor of a business located at 2648 Hunters Pond Run, Champaign, Illinois. The defendant submitted supporting documentation which claimed that his business had gross revenue of $96,100,

offset against no expenses. As part of the loan application process, it was acknowledged that the loan funds were to be used for payroll costs, rent/mortgage interest, utilities, operation expenditures, and other business costs.

15. The defendant, however, did not operate a business with the financial status and activity as reported. Instead, as part of a scheme to defraud, the defendant participated in the submission of falsified information on the loan application and the supporting documentation in order to secure a PPP loan that the defendant was not entitled to receive.

16. As a result of the scheme and artifice to defraud, Capital Plus Financial provided the defendant with a PPP loan on or about April 27, 2021, in which the defendant received $20,020 that was deposited into his Chase Bank account.

17. The defendant's PPP loan was not forgiven and considered delinquent by the SBA. On August 15, 2024, the SBA purchased the guarantee and disbursed $20,512.15 to Capital Plus Financial.

18. As a result of the scheme and artifice to defraud, the defendant defrauded the SBA; Capital Plus Financial; and others, and obtained money by means of materially false and fraudulent pretenses, representations, and promises.

**Execution of the Scheme**

19. On or about the dates set forth below, in Champaign County, in the Central District of Illinois, and elsewhere,

**COREY LEWIS,**

defendant herein, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, those being, wire transfers of loan funds from the SBA and Capital Plus Financial; located outside of the State of Illinois, to the defendant's bank account, which he accessed in the Central District of Illinois, when in truth and fact the defendant knew that he was not entitled to receive it. The interstate wire communications were sent on or about the approximate date below:

| Count | Approx. Date Sent | Amount | Sender |
|---|---|---|---|
| 1 | 8/6/2020 | $60,600 (EIDL) | SBA |
| 2 | 4/27/2021 | $20,020 (PPP) | Capital Plus Financial |

In violation of Title 18, United States Code, Section 1343.

A TRUE BILL.

s/Redacted

FOREPERSON

s/Redacted

GREGORY M. GILMORE
Acting United States Attorney
BDF